## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ALTHEA HARRIS**

**VERSUS**

**HOME CARE PCA, LLC**

**CIVIL ACTION**

**NO. 20-156-JWD-SDJ**

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

**I.    INTRODUCTION AND PROCEDURAL HISTORY**

1.    This action arises under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* (Doc. 1.)

2.    In this case, Plaintiff Althea Harris ("Plaintiff" or "Harris") claims her former employer, Defendant Home Care PCA, LLC, ("Defendant" or "Home Care") interfered with her taking protected FMLA leave. Specifically, Plaintiff argues that, when an employer requests certification by a health care provider of the employee's serious health condition, the employer must give the employee fifteen (15) days to obtain that certification. *See* 29 C.F.R. § 825.313(b). Here, says Plaintiff, Home Care fired her before the fifteen days expired, so Plaintiff is entitled to recover for Home Care's violation of the FMLA.

3.    Conversely, Home Care argues, *inter alia*, that Harris failed to give it sufficient notice that she might need FMLA leave. *See* 29 C.F.R. § 825.303. Thus, Home Care contends, the fifteen-day certification period was never triggered.

4.    The matter was tried to the bench on August 16, 2023. (Doc. 45.)

5.    The Court makes the following Findings of Fact and Conclusions of Law. For any finding of fact which is more appropriately considered a conclusion of law, it will be deemed as

such. For any conclusion of law more appropriately considered a finding of fact, it will be deemed as such.

6.     In sum, having carefully considered the law, the evidence in the record, and the arguments and submissions of the parties, the Court finds that Plaintiff did provide sufficient notice to reasonably apprise Home Care that she might need FMLA leave and that Defendant failed to give the requisite fifteen days to obtain a certification. Consequently, Plaintiff has proven her FMLA interference claim and will be awarded back pay, liquidated damages, interest, costs, and attorney's fees.

## II.    FINDINGS OF FACT

### A.  The Parties

#### 1. Plaintiff Althea Harris

7.     Harris has worked for Home Care since July of 2016. (Trial Transcript ("Tr.") 6; Doc. 1.)[1]

8.     She was a supervisor when the events of this suit took place. (Tr. 6.) As a supervisor, she did "a little bit of everything," including employee orientations, in-home training, client intakes, plans of care, Medicaid verification, patient care, answering the phone, employee charts, and other duties. (*Id.*)

9.     Plaintiff worked full time, 40 hours a week, making $12 an hour. (*Id.*)

#### 2. Defendant Home Care

10.     Home Care employs over 100 workers. (Joint Ex. 3, Brown Dep. at 7–8; *see also* Tr. 6–7.)

---

[1] Note, references to the Trial Transcript are to a preliminary draft provided by the Court Reporter to the Court. Neither party requested a transcript, so none is in the record.

11.    Tony Brown is the owner of Home Care. (Tr. 38.) Constance Lafayette is the office manager. (Tr. 38.) Lafayette was Harris's supervisor. (Tr. 42.)

12.    At Home Care, it was Brown and the payroll clerk's job to handle FMLA issues. (Tr. 50–51; *see also* Tr. 38 (Brown did the company's Human Resource work).)

### B.  Harris's First Notice and the June 5th Medical Note

13.    Toward the end of Harris's employment, Harris began suffering from depression. (Tr. 7.) She requested time off from her employer on June 5, 2018. (*Id.*) Harris testified that she "told Ms. Constance that [she] was going to have to go to the doctor." (*Id.*) This was the first time Harris told anyone about wanting to take time off. (Tr. 10.)

14.    Lafayette denied that Harris contacted her on June 5–7, 2018, (Tr. 42), but the Court does not find this denial credible.

15.    Harris provided Lafayette with a letter dated June 5, 2018, reflecting a visit she had that day with Janet Landry, a NP at St. Elizabeth Physicians. (Tr. 8–9, 26; Joint Ex. 4.) The letter said, "To Whom it May Concern: Althea Harris has been under my care on 6/5/2018. She may return to work on 6/11/2018. If you have any questions or concerns, please don't hesitate to call." (Joint Ex. 4.) Plaintiff conceded that the letter did not have a diagnosis and that there was no way the employer could tell from this letter what the diagnosis was. (Tr. 17.)

16.    At the end of this period, Harris said she "was planning on going back to work - - but [she] needed a little time off." (Tr. 9.)

### C.  The June 11th Medical Note

17.    On June 11, 2018, Harris had another note, this time from Thomas Cannon, a LCSW. (Tr. 9; Joint Ex. 5.) This note stated, "Please excuse Ms. Harris from working during the period of time starting on 06/12/2018 and lasting until 06/19/2018. The time off would be

extremely beneficial to her. I would appreciate her absence being excused. I anticipate her being able to return to work on 06/19/18." (Joint Ex. 5.)

18.    Plaintiff conceded that the letter does not contain a diagnosis or even says she needed to be off because of a condition. (Tr. 18.)

19.    Plaintiff also has a handwritten note from June 13, 2018, reflecting that, at 1:20 p.m., she went to pick something up from the office. (Pl. Ex. 2.) At 1:43 p.m., she went to the office to pick up what Ms. Brown had for her, and Harris left an envelope and told someone she was putting her doctor's excuse on Lafayette's desk. (*Id.*)

20.    Harris took time off after providing the note. (Tr. 9.) She planned to go back to work, but Home Care fired her before she could. (Tr. 9–10.)

### D. Home Care's June 13th Letter

21.    Troy Brown of Home Care did not follow up in any way with the social worker for more information. (Joint Ex. 3, Brown Dep. at 27.) He claimed that he would not follow up with a medical provider because of HIPAA but would instead get the information from the employee. (*Id.*)

22.    In any event, on June 13, 2018, Harris was told to come to the office to pick up the following letter that Brown had drafted:

> This letter is to inform you that unless you have been hospitalized in the last two weeks for at least "one full day", you are required to return to work immediately upon receipt of this letter, the following workday. If you are dealing with a "serious illness" or "serious injury" from a sudden accident, you will not be excused from work unless we receive detailed paperwork from your treating Physician ahead of time, outlining the severity of your illness or injury that warrants two full week off; a Doctors Excuse alone is not sufficient. If this said paperwork needs to be forwarded to us, it can be faxed to the number above.
>
> Two consecutive weeks off from work without a serious illness or serious injury constitutes excessive unexcused absences, and your employment will be deemed terminated if you do not return to work the following workday, after receiving this letter.
>
> *A note of importance, Doctors excuses does not automatically give an employee excused absences. Your employer has full discretion as to whether an excuse will warrant an absence to be excused or not.*
>
> I look forward to your full cooperation with this matter.

(Tr. 11–12, 51; Joint Ex. 6.)

      23.    Brown testified by deposition that Plaintiff's June 13, 2018, note led to this letter because Plaintiff "wasn't giving us no details or anything, and [he] wanted to know specifically what was going on . . ." (Joint Ex. 3, Brown Dep. at 24.) He commented how, in the letter, he said a "doctor's excuse alone does not . . . excuse absences." (*Id.*) He also wrote the letter because the first excuse came from a nurse practitioner. (*Id.* at 25.) Later, Brown said he sent her the initial letter at the time Brown sent her first doctor's excuse. (*Id.* at 28.) The Court finds all of these varying explanations unbelievable, particularly given Brown's failure to show up at trial.

    **E.  Harris's Subsequent Medical Visits**

      24.    Plaintiff continued going to the medical appointments after Brown's letter, as she "had a lot of doctors' appointments after that." (Tr. 12.)

      25.    On June 13, 2018, a progress note from Cannon (the LCSW) was drafted. The note says:

Note: patient showed up as a walk in this PM. She was extremely tearful in her presentation. She had received a note from her employer requesting she go back to work tomorrow[.] We processed her feelings. I offered to call the boss or provide more documentation[,] but she does not want her boss to know all her business. Gave her numbers to La workforce and Website job search info for Civil Service. Denied S/H ideations.

Goal: I cant [sic] go back to work.

(Joint Ex. 8.)

26.    Cannon "suggested she try to go to work and see if she could make it and see if there was something we could give her boss." (*Id.*)

27.    Harris was diagnosed with "Major depressive disorder, single episode, severe without psychotic features." (*Id.*)

28.    Harris recalled telling her doctor that she didn't want her employer to know her business, but she denied not wanting to give her employer more information. (Tr. 14–15.) Harris also did not remember why Cannon included the information about Civil Service and Louisiana Workforce. (Tr. 16.) As to the statement that her goal was not to go back to work, Harris said that she "needed to get [her]self and [her] health in shape to go back to work." (*Id.*) She had not made up her mind not to go back to work after June 19th. (Tr. 17.)

**F.  Harris's Termination and Later Events**

29.    Harris was terminated on June 14, 2018. (Tr. 20.) Lafayette had no evidence to dispute this fact, (Tr. 37), and she admitted that this was the correct date during the Court's questioning of her. (Tr. 52.)

30.    Lafayette stated that Brown asked Harris to submit information or come back to work with the June 13 letter, but Harris did neither. (Tr. 43–44.) That is why Lafayette sent Harris

the termination letter. (Tr. 44.) According to Lafayette, Harris was not terminated but "submitted a resignation for failure to come to the job." (Tr. 44.)

31.    Lafayette testified that Harris's doctors offered to call her job, but Harris did not want her to. (Tr. 44–46.) But Lafayette based this on Harris's medical records. (Tr. 44–45.)

32.    Plaintiff earlier testified that at no time did she give her employer any information that would allow them to know why she was taking time off, even after the 19th. (Tr. 34.) She did not email or send a letter. (*Id.*)

33.    On June 25, 2018, Plaintiff called Lafayette "from unemployment for termination date" which was "6-14-18." (Pl. Ex. 2.) She had called Home Care because the unemployment office wanted to know if she had been terminated. (Tr. 29.) Plaintiff received unemployment from June 2018 until January 2019. She had to certify that she was able to do her job and could go to work. (Tr. 28.) She needed the termination to get food stamps. (Tr. 29.) But, the two weeks that she was unable to do her job was from June 4 to 19, 2018. (Tr. 28.)

34.    Additionally, Plaintiff said she never gave Home Care any additional information other than what was in the letters, as she had already been fired. (Tr. 18, 29.)

**G. Home Care's Justifications**

35.    Troy Brown testified that:

> [Harris] actually was terminated because she stopped coming to work without having any communication whatsoever, and after over a week or so - - and that it could have been two weeks - -out of being concerned, I directed . . . my office manager to communicate with her to find out what was going on and let us know what's really going on, because she really abandoned her job without saying anything. She just stopped coming to work, so we gave her the opportunity to be able to let us know what was going on rather than just terminate her carte blanche without finding out anything, and, of course, when . . . I communicated with her [by] letter. . . we heard back from her in the form of something from her doctor. . . . I gave her a letter asking, "Do you have a serious illness? Do you have an injury? Is it something that's stopping you from being able

7

to come to work that you just didn't tell us? And, of course, she brought us in something from there, but when I asked for the documentation beyond just a doctor's excuse . . she never got back in touch with us anymore after. . . . [S]he was deemed terminated, because she was given . . . reasonable time to bring us something to let us know where we are. . . . "Are you dealing with something? Is there something that we need to know about that we don't know about?" And then, of course, she never brought that in, and because she didn't bring it in, her employment was deemed terminated then.

(Joint Ex. 3, Brown Dep. at 19–21.) Brown said a "reasonable time" was "a few days" or "less than a week" because "she stopped coming to work without saying anything[.]" (*Id.* at 21.)

36.    Home Care harps on the fact that Plaintiff never talked to anyone at Home Care about taking Family Medical Leave time or expressing any intention to take it. (Tr. 32.) Home Care also emphasizes that Plaintiff was not hospitalized or institutionalized during the two weeks she was out. (Tr. 33.) But Plaintiff said that, at the time she was fired, she didn't know what Family Medical Leave was. (Tr. 34.)

37.    Home Care also focuses on the fact that the personnel manual has a policy on absenteeism. Specifically, Defendant's handbook provides:

> If you are unable to work, call your supervisor or manager during the first sixty (60) minutes of the work day and state your reason for the absence. An absence of three (3) days without notification will he considered a resignation of employment.
>
> Excessive absences are strictly prohibited and will not be tolerated. We understand employees may need to be absent from time to time.
>
> Excused absences shall include, but are not limited to the following: Other excused absences shall be at the supervisor's discretion.

(Joint Ex. 9 at 8; *see also* Tr. 41.)

38.    Lafayette likewise said that Home Care was not given any information as to why Harris was not coming back to work in the two doctors' notes, and they needed more information. (Tr. 46–47.) However, Lafayette conceded that, if an employer wants more information from a

medical provider, they are required by the FMLA to give the employee fifteen days to provide that information. (Tr. 49.) Lafayette also conceded that Harris was not given that fifteen days. (Tr. 49.) On redirect, Lafayette claimed Plaintiff had more than fifteen days to provide the information, (Tr. at 49–50), but she admitted to the Court that there are in fact only ten days between June 4th and June 14th, the date she was fired. (Tr. 52.)

### III.   CONCLUSIONS OF LAW

#### A.  Jurisdiction

39.     Jurisdiction is proper under 28 U.S.C. § 1331, for federal question jurisdiction. (Doc. 1 at 1.)

#### B.  The FMLA Generally

40.     "The FMLA permits an employee to take up to twelve weeks of medical leave for their own serious medical condition or for the care of a family member with a serious medical condition." *Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013) (per curiam) (citing 29 U.S.C. § 2612(a)(1)).

41.     The purposes of the FMLA include: "(1) to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity;" "(2) to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition;" and (3) "to accomplish" the first and second purposes "in a manner that accommodates the legitimate interests of employers[.]" 29 U.S.C. § 2601(b)(1)–(3).[2]

---

[2] Other purposes of the FMLA include: (4) "to accomplish" the first two purposes in a way that "minimizes the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons (including maternity-related disability) and for compelling family reasons, on a gender-neutral basis;"

42.    "The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of an employee's right to take FMLA leave." *Lanier¸* 527 F. App'x at 316 (citing 29 U.S.C. § 2615(a)(1)).

> To establish a prima facie interference case, [a plaintiff] must show that (1) she was an eligible employee, (2) [defendant] was an employer subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, and (5) [defendant] denied her the benefits to which she was entitled under the FMLA.

*Id.* (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012)).

43.    The first two requirements are not contested. Rather, the key to this case lies in the last three.

### C. Entitlement to Leave

44.    An eligible employee is entitled to FMLA leave for, *inter alia*, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves--(A) inpatient care in a hospital, hospice, or residential medical care facility; *or* (B) continuing treatment by a health care provider." *Id.* § 2611(11) (emphasis added).

45.    "The term 'health care provider' means--(A) a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or (B) any other person determined by the Secretary to be capable of providing health care services." *Id.* § 2611(6). Under the regulations, "(2) Others 'capable of providing health care services' include only: . . . (ii) Nurse practitioners [and] clinical social workers . . . who are

---

and (5) "to promote the goal of equal employment opportunity for women and men, pursuant to such clause." 29 U.S.C. § 2601(b)(4)–(5).

authorized to practice under State law and who are performing within the scope of their practice as defined under State law[.]" 29 C.F.R. § 825.102.

46.    Despite some issue being raised about this in Brown's deposition and at trial, there is no serious dispute that the NP and LCSW in this case fall within the parameters of the statute. Thus, the key question is whether Plaintiff was under "continuing treatment" by the NP and social worker.

47.    The statute does not define "continuing treatment by a healthcare provider," but the regulations provide guidance:

> A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (a) Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: . . .
>
> > (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider[.].

*Id.* § 825.115.

48.    Here, the Court finds that Harris satisfied these requirements. She was treated several times within a thirty-day period by a nurse practitioner and a clinical social worker. (Joint Exs. 4, 5.) The Court also finds credible Harris's testimony that she was temporarily unable to perform the functions of her job and that she needed time to recover from this depression. (Tr. 7, 9, 12, 16.)

49.    Moreover, the June 13, 2018, clinical note from the LCSW, while somewhat contradictory, confirms Harris's condition. Again, Harris was diagnosed with "Major depressive

disorder, single episode, severe without psychotic features." (Joint Ex. 8.) While Cannon

"*suggested* she try to go to work and see if she could make it," the note continues that Harris " see

if there was something we could give her boss." (*Id.*) This latter part is consistent with the note's

earlier comment that the LCSW "offered to call the boss or provide more documentation[.]" (*Id.*)

Thus, contrary to Home Care's position, the note does not show that Harris was capable of working

but rather confirms that she was not, particularly when read with the June 5 and 11 medical notes.

50.     Thus, Harris has demonstrated that she was entitled to FMLA leave.

### D.  Proper Notice

#### *1. Applicable Law*

51.     Again, the other key question is whether Plaintiff "gave proper notice of her

intention to take FMLA leave." *Lanier*, 527 F. App'x at 316. The Fifth Circuit has provided the

following guidance on this issue:

> If an employee's need for leave is foreseeable, the Act requires the
> employee to provide the employer with thirty days of notice.
> [*Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840, 842
> (5th Cir. 2007)] (citing 29 C.F.R. § 825.302). For unforeseeable
> absences, the employee must provide notice " 'as soon as
> practicable.' " *Id.* (quoting 29 C.F.R. § 825.303(a)). The adequacy
> of an employee's notice of the need for leave is dependent on the
> facts and circumstances of each case. *Manuel v. Westlake Polymers
> Corp.,* 66 F.3d 758, 764 (5th Cir.1995).
>
> "An employee need not expressly assert rights under the FMLA or
> even mention the FMLA." *Saenz v. Harlingen Med. Ctr., L.P.,* 613
> F.3d 576, 583 (5th Cir. 2010); *Willis v. Coca Cola Enters., Inc.,* 445
> F.3d 413, 417 (5th Cir. 2006). "The critical question is whether the
> information imparted to the employer is sufficient to reasonably
> apprise it of the employee's request to take time off for a serious
> health condition." *Satterfield v. Wal–Mart Stores, Inc.,* 135 F.3d
> 973, 977 (5th Cir. 1998) (internal quotation marks, citation, and
> emphasis omitted). The employee must provide such information
> about her condition as will make it evident that the FMLA is
> implicated. *Id.* at 981. The burden will shift to the employer to make
> further inquiry as to whether the leave qualifies for FMLA

> protection. *Id.* at 982 (citing *Gay v. Gilman Paper Co.,* 125 F.3d 1432, 1433–36 (11th Cir. 1997)); *see also Willis,* 445 F.3d at 417 (noting under regulations the employer's responsibility to designate leave as FMLA-qualifying); 29 C.F.R. § 825.303(b) ("The employer will be expected to obtain any additional required information through informal means.").

*Towns v. Ne. Miss. Elec. Power Ass'n*, 478 F. App'x 244, 246–47 (5th Cir. 2012) (per curiam).

52. Additionally, in *Lanier*, the Court explained:

> Although an employee need not use the phrase "FMLA leave," she must give notice that is sufficient to reasonably apprise her employer that her request to take time off could fall under the FMLA. This court does not apply categorical rules for the content of the notice; instead we focus on what is "practicable" based on the facts and circumstances of each individual. An employer may have a duty to inquire further if statements made by the employee warrant it, but "the employer is not required to be clairvoyant."

*Lanier* , 527 F. App'x at 316 (citations omitted).

53. The regulations provide further information as to the content of the notice. "When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a).

54. "An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." *Id.* § 825.303(b). "Depending on the situation, such information may include that a condition renders the employee unable to perform the functions of the job; [or] . . . whether the employee or the employee's family member is under the continuing care of a health care provider; . . . and the anticipated duration of the absence, if known." *Id.*

55. "When an employee seeks leave for the first time for a FMLA–qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." *Id.*

56.   "Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act[,]" but "[t]he employer will be expected to obtain any additional required information through informal means." *Id.*

57.   Likewise, "[w]hen the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances" *Id.* § 825.303(c). "[I]n the case of an emergency requiring leave because of a FMLA–qualifying reason, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved." *Id.*

58.   "Failure to respond to reasonable employer inquiries regarding the leave request may result in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA–qualifying." *Id.* § 825.303(b). Likewise, "[i]f an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA–protected leave may be delayed or denied." *Id.* § 825.303(c).

59.   Thus, for example, in *Lanier*, the Fifth Circuit affirmed the granting of summary judgment for the employer when the only request for leave was a text message asking to be taken off call one evening, which was sent after the employee learned her father was in the emergency room, even though the employer had knowledge that the father was over 90 years old, in poor health, and despite having been told that the father was having breathing problems that morning. 527 F. App'x at 316.

60.   Conversely, in *Towns*, the Fifth Circuit reversed the granting of summary judgment because "the facts and circumstances as articulated by Towns suggest that a reasonable jury could conclude that Towns would have pursued FMLA leave had Crabb inquired further and provided

her with that opportunity" and because "there is a fact issue as to whether Towns provided
NEMEPA with sufficient notice of her need for FMLA leave". 478 F. App'x at 248.

### 2. Analysis

61.    In sum, Harris prevails on this issue. That is, the Court finds that Harris provided
proper notice to Home Care so as to apprise it of the need for FMLA leave.

62.    The Court bases its conclusion on several grounds. First, Harris herself testified that
she "told Ms. Constance that [she] was going to have to go to the doctor." (Tr. 7.) The Court found
this testimony credible—and more credible than Lafayette's denial.

63.    Second, the Court finds that the June 5th and 11th Medical Notes also support the
Court's conclusion that adequate notice was given. The June 5th Medical Note expressly stated that
Harris had been "under [the NP's] care on 6/5/2018," that "[s]he may return to work on 6/11/2018,"
and that the employer could reach out to the NP if it had any questions. (Joint Ex. 4.) Likewise,
the June 11th Medical Note, also requested an additional week from work off, stating that "time
off would be extremely beneficial to her," that the LCSW would "appreciate her absence being
excused," and that he "anticipate[d] her being able to return to work" the following week. (Joint
Ex. 5.)

64.    Defendant complains that the precise medical condition is not known from the two
notes and that Plaintiff did not specifically invoke the FMLA, but, in doing so, Defendant ignores
the governing regulations. Again, "[w]hen an employee seeks leave for the first time for a FMLA–
qualifying reason, the employee need not expressly assert rights under the FMLA or even mention
the FMLA." 29 C.F.R. § 825.303(b). "An employee shall provide sufficient information for an
employer to *reasonably* determine whether the FMLA *may* apply to the leave request." *Id.*

(emphasis added). Thus, Plaintiff did not have to prove this FMLA requirement, just that it *reasonably may* apply.

65.    Further, the regulations continue, "Depending on the situation, such information *may* include that a condition renders the employee unable to perform the functions of the job; [or] . . . whether the employee . . . is under the continuing care of a health care provider; . . . and the anticipated duration of the absence, if known." *Id.* Here, again, the notes satisfy these through their requests for time off and the facts that the notes themselves show continuing care by healthcare providers and the specific durations of anticipated leave.

66.    And third, Brown's own June 13, 2018, letter confirms that Harris had sufficiently apprised Home Care of the need for FMLA leave. As Plaintiff counsel stated during his questioning at trial, the letter acknowledges that Harris at least may be dealing with a serious illness and invokes the employer's right under the FMLA for additional information. (Joint Ex. 6; Tr. 53 ("If you are dealing with a 'serious illness' . . . you will not be excused from work unless we receive detailed paperwork from your treating Physician ahead of time, outlining the severity of your illness . . . that warrants two full weeks off.").) The Court finds that there is little plausible explanation for Brown to send a letter of this kind if Home Care were not already aware of the possibility that the FMLA may be in play.

67.    In sum, the Court finds that the "information imparted to [Home Care] [was] sufficient to reasonably apprise it of [Harris's] request to take time off for a serious health condition." *Towns*, 478 F. App'x at 247 (citation omitted).

68.    The burden then shifted to Home Care "to make further inquiry as to whether the leave qualifies for FMLA protection." *Id.*

### E.  Denial of FMLA Benefits

69.     To prevail, Harris must satisfy the final element of an FMLA claim: that Home

Care "denied her the benefits to which she was entitled under the FMLA." *Lanier*, 527 F. App'x

at 316 (citations omitted).

70.     "An employer may require that a request for [FMLA] leave . . . be supported by a

certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a); *see

also* 29 C.F.R. § 825.305(a). "In the case of unforeseeable leave, an employer may deny FMLA

coverage for the requested leave if the employee fails to provide a certification within 15 calendar

days from receipt of the request for certification unless not practicable due to extenuating

circumstances." 29 C.F.R. § 825.313(b).

71.     The Fifth Circuit has noted the following about this certification requirement:

> In the instant case, Harlingen's counsel conceded at oral argument
> that Saenz could not have been required to certify an absence after
> she was terminated. In fact, termination during the mandatory 15–
> day compliance period could itself be deemed a FMLA violation.
> *See Lubke v. City of Arlington,* 455 F.3d 489, 496–97 (5th Cir. 2006)
> (stating that 29 C.F.R. § 825.305(b) "requires" that the employer
> allow the employee at least 15 days to respond to the medical
> certification request); *see also Killian v. Yorozu Auto. Tenn., Inc.,*
> 454 F.3d 549, 554–55 (6th Cir. 2006) (termination of employee six
> days into 15–day compliance period "was clearly a violation of the
> FMLA"); *Cooper v. Fulton County,* 458 F.3d 1282, 1286 (11th Cir.
> 2006) (termination of employee before the lapse of the 15–day
> compliance period deemed impermissible under FMLA);
> *Muhammad v. Ind. Bell Tel. Co.,* 182 Fed. Appx. 551, 553 (7th
> Cir.2006) (unpublished) (describing the 15–day compliance period
> as a prerequisite to adverse employment action); *Rhoads v. FDIC,*
> 257 F.3d 373, 383 (4th Cir. 2001) ("[T]he employer *must* allow the
> employee at least fifteen calendar days to submit [certification]."
> (emphasis added)); *but see Young v. Russell Corp.,* No. 2:08–CV–
> 148, 2008 WL 5412782, *2 (M.D. Ala. Dec. 29, 2008) (noting that
> "[i]f the employee never produces the certification, the leave is not
> FMLA leave" where employee was afforded full 15–day period and
> failed to comply (quoting 29 C.F.R. § 825.311(b) (2003)) (alteration
> in original)); *Tippens v. Airnet Sys., Inc.,* No. 2:05–CV–421, 2007

> WL 1026954, *5 (S.D. Ohio Mar.30, 2007) (finding that failure to submit medical certification was "fatal to a claim of FMLA interference" where employer granted temporary approval until lapse of 15–day period).

*Saenz v. Harlingen Med. Ctr., L.P.*, 613 F.3d 576, 582 n.7 (5th Cir. 2010), *superseded by regulation* (*though on other grounds), as stated by Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017).

72.     Home Care cannot seriously dispute that it did not provide Harris with fifteen (15) days before terminating her. Indeed, Lafayette admitted as much. (Tr. 49, 52.) Thus, Home Care breached its FMLA obligations and interfered with Harris's rights under the FMLA.

73.     The Court notes that neither side referred to that portion of 29 C.F.R. § 825.313(b) which states, "If the employee never produces the certification, the leave is not FMLA leave." But, Home Care cannot rely on this provision to defeat Harris's claims.

74.     First, Home Care did not specifically raise this issue in post-trial briefing. (*See* Doc. 47.) "The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal." *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003)). "By analogy, failure to brief an argument in the district court waives that argument in that court." *Id.* (quoting *Magee*, 261 F. Supp. 2d at 748 n.10); *see also U.S. ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 672 (N.D. Miss. 2015) ("This failure to develop the relevant argument effectively represents a waiver of the point.") (citing *United States v. Dominguez–Chavez*, 300 F. App'x 312, 313 (5th Cir. 2008) ("Dominguez has failed to adequately raise or develop his due process and equal protection arguments in his appellate brief, and, thus, they are waived."); *El–Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort

at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.")).

75.    Second, even if there were no waiver, this argument would fail on the merits. For one, Plaintiff stated she provided no supplemental information to Home Care, (*see* Tr. 18, 29, 34), Lafayette mentions at one point that her employer received Plaintiff's medical records, though it is unclear from Lafayette's testimony as to when this occurred. (*See* Tr. 55.) Thus, the Court cannot say that Harris "never produce[d] the certification" so as to violate this last part of § 825.313(b).

76.    Moreover, Home Care makes no argument that the medical records received by Home Care failed to be sufficient certification under 29 C.F.R. § 825.306. (*See* Doc. 47.) Thus, any such argument is waived. Even if it weren't, this Court already determined above that those records (including the LCSW's note and letters) were sufficient to demonstrate the Plaintiff's medical condition, her need for leave, her inability to perform the essential functions of her job, the nature of her restrictions, and the likely duration of her incapacity. *See* 29 C.F.R. 825.306.

77.    For these reasons, the Court finds that Plaintiff has satisfied the elements of her FMLA interference claim.

### F.  Compliance with Employer Conditions

78.    Defendant harps on Plaintiff's alleged failure to comply with the absence policy. Specifically, Defendant's handbook provides:

> If you are unable to work, call your supervisor or manager during the first sixty (60) minutes of the work day and state your reason for the absence. An absence of three (3) days without notification will he considered a resignation of employment.
>
> Excessive absences are strictly prohibited and will not be tolerated. We understand employees may need to be absent from time to time.
>
> Excused absences shall include, but are not limited to the following: Other excused absences shall be at the supervisor's discretion.

(Joint Ex. 9 at 8.)

79. The regulation governing an employer's call-in policy provides:

> (d) Complying with employer policy. An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require that written notice set forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave. An employee also may be required by an employer's policy to contact a specific individual. Unusual circumstances would include situations such as when an employee is unable to comply with the employer's policy that requests for leave should be made by contacting a specific number because on the day the employee needs to provide notice of his or her need for FMLA leave there is no one to answer the call-in number and the voice mail box is full. Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA–protected leave may be delayed or denied. However, FMLA–protected leave may not be delayed or denied where the employer's policy requires notice to be given sooner than set forth in paragraph (a) of this section and the employee provides timely notice as set forth in paragraph (a) of this section.

29 C.F.R. § 825.302(d).

80. The Court finds that this regulation does not save Defendant. Putting aside the fact that the June 5 and 11 medical notes provide the very written notice contemplated by the regulation, the circumstances of this case present unusual circumstances justifying exemption from Home Care's call-policy—namely, that Harris had a conversation with Lafayette about her need for leave, that Harris provided notes explaining her reason for being unable to work, that Harris was in fact suffering from a major depressive episode preventing her from working, and that Brown did not seriously dispute receiving Harris's letters (and in fact said his June 13 letter was in direct response to these medical notes), (Joint Ex. 3, Brown Dep. at 24–25, 28).

81.    Moreover, again, § 825.302 qualifies the general rule by stating, "However, FMLA–protected leave may not be delayed or denied where the employer's policy requires notice to be given sooner than set forth in paragraph (a) of this section and the employee provides timely notice as set forth in paragraph (a) of this section." 29 C.F.R. § 825.302(d). Section 825.302(a) and (b) provides in relevant part:

> (a) Timing of notice. An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable . . . . If 30 days notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable. . . . Whether FMLA leave is to be continuous or is to be taken intermittently or on a reduced schedule basis, notice need only be given one time, but the employee shall advise the employer as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown. . . .
>
> (b) As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case. When an employee becomes aware of a need for FMLA leave less than 30 days in advance, it should be practicable for the employee to provide notice of the need for leave either the same day or the next business day. In all cases, however, the determination of when an employee could practicably provide notice must take into account the individual facts and circumstances.

*Id.* § 825.302(a)–(b).

82.    Interpreting this regulation, the Court finds that Harris gave notice "as soon as both possible and practical" under the totality of the circumstances. Moreover, Harris complied with her obligations to give notice "only . . . one time" and "as soon as practicable if dates of scheduled leave change or are extended . . . ." *Id.* § 825.302(a).

83.    In sum, Defendant's notice policy does not defeat Harris's claim.

### G. Damages

84.     "Any employer who violates section 2615" of the FMLA by, for instance, interfering with an employee's rights, "shall be liable to any eligible employee affected . . . for damages equal to . . . the amount of . . . any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation[.]" 29 U.S.C. § 2617(a)(1)(A)(i)(I).

85.     Again, Plaintiff worked full time, 40 hours a week, making $12 an hour, or $480 dollars a week. (Tr. 6.) She was terminated on June 14, 2018. Two hundred, seventy-five (275) weeks have passed from that day until today, which brings the total amount of backpay to $132,000.

86.     The Court notes that Defendant made no argument about reducing this damage amount in post-trial briefing. (*See* Doc. 47.) Thus, any such position is waived under the above authorities. *See JMCB*, 336 F. Supp. 3d at 634.

87.     Additionally, the Fifth Circuit has recognized that an award of front pay is acceptable if reinstatement is not feasible. *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007)

> In exercising its discretion to award front pay, the district court must consider whether an award of front pay is reasonable under the facts of the case. Front pay can only be calculated through intelligent guesswork, and we recognize its speculative character by according wide latitude in its determination to the district courts. This court has identified several factors to be considered in determining the amount of a front pay award: (1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the age and physical condition of the employee, (5) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors which could validly affect the employer/employee relationship.

*Id.* (cleaned up).

88.     As Plaintiff concedes in briefing, Ms. Harris has reached retirement age (Doc. 48 at 14), and she only worked for Home Care for about two years prior to her termination. While Plaintiff asks for two years' worth of front pay, the Court finds that, under the circumstances (including Plaintiff's age, limited work experience at Home Care, the relative lack of evidence on the other factors making such an award speculative, and the high amount of the back pay award which already took into account five possible years of employment), an award of front pay is not appropriate in this case.

89.     Finally, if an employee prevails on an FMLA interference claim, that employee is also entitled to "an additional amount as liquidated damages equal to the sum of" their lost wages, monetary losses, and interest on those amounts, unless the defendant employer "proves to the satisfaction of the court that the act or omission which violated section 2615 . . . was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615[.]" *Id.* § 2617(a)(1)(A)(iii). In that case, the court may, in its discretion, reduce the above award of damages and interest. *Id.*

90.     Here the Court finds that Home Care failed to establish that it was in good faith and had reasonable grounds for believing its conduct was FMLA-compliant. In particular, no reasonable person would conclude that Home Care acted appropriately by giving Harris only one day to provide medical documentation in light of the FMLA regulation's clear allowance for fifteen days. Moreover, Home Care's carefully worded June 13th letter, which used language relevant to the FMLA without specifically mentioning that statute or its rights, strikes the Court as a subterfuge to strong-arm Plaintiff and prevent her from exercising her rights under the FMLA. Thus, Plaintiff is entitled to liquidated damages.

91.    "The court in such an [FMLA] action *shall*, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3) (emphasis added).

92.    Accordingly, the Court will award costs and attorney's fees. Plaintiff shall submit a memorandum of costs in accordance with Middle District of Louisiana Local Civil Rule 54(c) and a motion for attorney's fees in accordance with Local Civil Rule 54(b).

**IV.    CONCLUSION**

93.    For all these reasons, the Court finds that Plaintiff Althea Harris has satisfied her burden of proving that Home Care PCA, LLC, interfered with her exercising her rights under the FMLA and that Harris is entitled to (a) $132,000 in back pay, (b) interest on that amount, calculated at the prevailing rate, (c) an equal amount of liquidated damages, and (d) costs and attorney's fees in amounts to be determined after trial. The Court will enter judgment accordingly.

Signed in Baton Rouge, Louisiana, on September 26, 2023.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**